UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
NICOLE ANGLISANO,

                Plaintiff,        **MEMORANDUM AND ORDER**

      -against-                  14-CV-3677 (SLT) (SMG)

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                Defendant.
----------------------------------------------------x

**TOWNES, United States District Judge:**

Plaintiff Nicole Anglisano, formerly a teacher at PS 14 in Queens, New York, brings this action against her former employer, defendant New York City Department of Education (the "DOE"), alleging, *inter alia*, that she was terminated in retaliation for exercising her First Amendment rights of freedom of speech and freedom of association and in violation of both the New York State and New York City Human Rights Laws. Defendant now moves to dismiss the action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## *BACKGROUND*

The following facts are drawn from the Verified Complaint dated May 20, 2014 (the "Complaint"), the allegations of which are assumed to be true for purposes of this memorandum and order. Plaintiff is a Caucasian woman who was 33 or 34 years old at the time this action was commenced (¶¶ 8, 12).[1] After earning a Master's Degree in Literacy (Birth - 6th Grade) in

---

[1] Numbers in parentheses preceded by "¶" denote paragraph numbers in the Verified Complaint.

2005 and receiving a New York State Certification in Literacy (Birth – 6th Grade) in 2007, plaintiff began teaching at PS 14 in late August 2008 (¶¶ 13-14).

Although plaintiff was hired to work as a fourth grade general education teacher, she started teaching kindergarten in 2009 (¶¶ 16, 18). According to the Complaint, plaintiff "proved herself as a hard-working, dependable, and professional teacher" and "developed good working relationships with her colleagues ..." (¶¶ 17-18). However, she was never granted tenure and remained a probationary employee throughout her five years at PS 14 (¶ 19).

During the 2012-13 school year, plaintiff was assigned to teach an "Integrated Co-Teaching class" (¶ 20). Since that class contained six special education students in addition to approximately 20 general education students, plaintiff was paired with a special education teacher, Melissa Angelides (¶ 20). The Complaint does not describe Angelides, but states that she had "a very poor reputation among staff members at PS 14" (¶ 20).

Over the course of the school year, Angelides behaved in a way that plaintiff found "deeply troubling" (¶ 21). Some of the behavior was directed toward plaintiff. For example, Angelides "aggressively grabbed" plaintiff's arm on one occasion (¶ 31); took plaintiff's "plan book" (¶ 21); rummaged through plaintiff's file cabinet and threatened to throw out plaintiff's personal papers (¶ 21); opened plaintiff's mail, removed plaintiff's paycheck, and refused to return the check unless plaintiff provided "identification" (¶ 29). In addition, Angelides spoke to plaintiff in "a rude, demeaning, and disrespectful manner" (¶ 28); "continuously yelled at Plaintiff in front of the students and other staff members" (¶ 28); and once told the students, "Don't look at Ms. Anglisano. I am the teacher in this room" (¶ 23).

2

Angelides also acted inappropriately with the schoolchildren. For example, she "yelled at students on a regular basis" (¶ 27); told several children that "the reason they didn't listen was because 'they don't know English'" (¶ 22); told one child that he was "stupid" (¶ 24); and told a general education student that he or she was "not [her] problem," but "someone else's problem" (¶ 27). In addition, Angelides pulled a boy's hair (¶ 26) and not only told the kindergartners about Adolph Hitler, but demonstrated the Nazi salute (¶ 30).

Plaintiff made several complaints to the school's administrators. On several occasions, she spoke to her immediate supervisor, Assistant Principal Gerard De Paola, about the "troubling actions," expressing "her concern about the safety of the young children in her class" (¶ 33). She also submitted a written statement to De Paola on or about April 20, 2013, in which she "stated that she perceived favorable and preferential treating was being afforded to teachers of Hispanic descent" (¶ 34). Finally, in early May 2013, plaintiff met with PS 14's principal, Rosemary Sklar, and expressed her concern that Angelides' "bizarre, aggressive, and frightening behavior" threatened the "safety and well-being of the students in the school" (¶ 35). However, neither De Paola nor Sklar took any remedial action (¶¶ 33-34, 36).

In June 2013, plaintiff was notified that she was "on the school's roster for the 2013-2014 school year," but would be teaching another Integrated Co-Teaching class (¶ 37). Afraid that she "would likely be forced to work again with ... Angelides," plaintiff filed a formal grievance with her union regarding her assignment for the 2013-2014 school year (¶ 37). One week later, on June 25, 2013, plaintiff was notified that she was being terminated (¶ 39). Plaintiff was afforded the opportunity to submit a "written response" to the termination but in

3

late July 2013, Madeline Chan, the Superintendent of Schools, affirmed the decision to terminate plaintiff (¶¶ 41-42).

Plaintiff retained counsel who, in late May 2014, commenced this action in the Supreme Court of the State of New York, Nassau County. The Complaint appears to allege three causes of action, each of which alleges retaliation. The first cause of action, set forth in paragraph 43 of the Complaint, advances claims under state and city laws, alleging that the DOE terminated plaintiff "because of her good faith opposition to discriminatory practices," in violation of both the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin Code § 8-101, *et seq.* (the "NYCHRL"). The two remaining causes of action are federal claims, brought pursuant to 42 U.S.C. § 1983. The second cause of action, set forth in paragraph 44 of the Complaint, alleges that the DOE terminated plaintiff "because she chose to engage in ... and participate in union activities" and that this retaliation violated plaintiff's First Amendment right to freedom of association. The third cause of action, set forth in paragraph 45 of the Complaint, alleges that the DOE terminated plaintiff "because she spoke out about ... Angelides' dangerous and bizarre behavior based on her concern for the young students in the class ...." The pleading alleges that plaintiff was acting as a private citizen in "speaking out on a matter of public concern"— namely, the "safety and well-being of the students in the school" (¶¶ 33, 35)—and that plaintiff's termination constituted retaliation for plaintiff's exercise of her First Amendment right to free speech (¶ 45).

*The Motion to Dismiss*

Defendant DOE now moves to dismiss all three causes of action. In the first point of its Memorandum of Law in Support of Defendant's Motion to Dismiss ("Defendant's Memo"), the DOE argues that the Complaint does not state a plausible First Amendment retaliation claim. This point principally relates to plaintiff's third cause of action, asserting that plaintiff's "First Amendment Claim" fails because plaintiff was acting pursuant to her official job duties in complaining to her supervisors about Angelides' actions. In support of this argument, the DOE has submitted a copy one of its regulations—Regulation of the Chancellor Number A-421— which requires a staff member who witnesses verbal abuse of a student to report it to the principal or the principal's designee. *See* Declaration of Sarah B. Evans dated Oct. 21, 2014 (the "Evans Declaration"), Ex. A.

The first point also briefly addresses the second cause of action. Defendant argues that "[a] teacher's grievance to a union concerning alleged dangers to students in a classroom is not protected speech under the First Amendment." Defendant's Memo, p. 9. In support of this argument, defendant relies solely on *Ross v. N.Y.C. Dep't of Educ.*, 935 F. Supp. 2d 508, 519 (E.D.N.Y. 2013), citing that case for the proposition that an educator who complained to his union representative that his classroom's conditions endangered the students was acting as a teacher, rather than a private citizen.

The second point of Defendant's Memo addresses the first cause of action, asserting that plaintiff has failed to state a plausible claim for retaliation under the NYSHRL or the NYCHRL. This point assumes, for purposes of this motion, that plaintiff's written statement to De Paola constituted "protected activity," but argues that "plaintiff cannot plausibly allege that she was

5

terminated from her employment in June 2013 in retaliation for this purported 'statement.'" Defendant's Memo, p. 10. Defendant tacitly acknowledges that causation may be inferred from the temporal proximity between a plaintiff's protected activity and the plaintiff's termination but, citing to three district court opinions, asserts that plaintiff's statement and termination were insufficiently proximate to permit this inference. *See* Defendant's Memo, pp. 12-13. Defendant also argues that "no reasonable juror could find a plausible connection between plaintiff's statement in April 2013 and her termination ... given the fact that plaintiff's continued employment was clearly in jeopardy prior to the alleged protected activity." *Id.*, p. 12. In support of this argument, the DOE submits an Annual Performance Evaluation dated June 21, 2011, which states that plaintiff needed to improve her performance in some regards; three unsatisfactory Observation Reports from 2012; and a letter from Assistant Principal De Paola dated June 4, 2012, which criticized the manner in which plaintiff wrote comments on students' report cards. *See* Evans Declaration, Exs. B - D.

In Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition"), plaintiff opposes dismissing any of the three causes of action. With respect to the third cause of action, plaintiff concedes that statements made "pursuant to her official duties" are not Constitutionally protected speech. Plaintiff's Opposition, p. 8. However, plaintiff notes that the Complaint specifically alleges that plaintiff was speaking as a "private citizen" when she complained about Angelides' behavior. *Id.* Plaintiff also points out that the Complaint is silent with respect to plaintiff's "duty ... to speak out about the inappropriate behavior and unsound educational practices of other teachers," *id.*, p. 9, and distinguishes various cases cited by defendant.

With respect to the second cause of action, plaintiff cites to *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 509 (E.D.N.Y. 2011), for the proposition that "any speech that arises from [a person's] position in a union ... is constitutionally protected." Plaintiff's Opposition, p. 13. Plaintiff implies that her grievance regarding working with Angelides was protected speech and attempts to distinguish *Ross*.

With respect to the first cause of action, plaintiff cites to numerous cases in which causation was inferred from temporal proximity, even though the protected activity and adverse employment action occurred more than three months apart. Plaintiff's Opposition, p. 17. In addition, plaintiff notes that the documents submitted as Exhibit B - D to the Evans Declaration are matters outside the Complaint, and cannot properly be considered upon a motion to dismiss. *Id.*, p. 18. Finally, plaintiff notes that, even if the documents were considered, they would not be "dispositive" of plaintiff's claim of retaliation. *Id.*, p. 20.

## *DISCUSSION*

### *Legal Standard*

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Rothstein v. UBS AG*, 708 F.3d 82, 90 (2d Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

If a party has not "nudged [her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*

When considering a Rule 12(b)(6) motion, materials outside the pleadings are "generally not considered ... unless the court treats [the motion] as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). Aside from the allegations in the complaint, which are assumed to be true, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). If matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and all parties must be given a reasonable opportunity to present material pertinent to the motion. Fed. R. Civ. P. 12(d).

*First Amendment Retaliation*

"To state a claim of First Amendment retaliation under Section 1983, a plaintiff must show 1) that his speech was constitutionally protected; 2) that he suffered an adverse employment action; and 3) that a causal relationship existed between the speech and the adverse employment action." *Miller v. N.Y.C. Dep't of Educ.*, 71 F. Supp. 3d 376, 383 (S.D.N.Y. 2014) (citing *Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 313 (2d Cir. 2005)). "Speech by a public employee is protected by the First Amendment only when the employee is speaking 'as a citizen ... on a matter of public concern.'" *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012) (quoting *Piscottano v. Murphy*, 511 F.3d 247, 269-70 (2d Cir.

2007)). Accordingly, "public employees cannot state a claim for First Amendment retaliation unless (among other requirements) they speak as citizens on matters of public importance." *Castine v. Zurlo*, 756 F.3d 171, 176 n. 5 (2d Cir. 2014) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes ...." *Garcetti*, 547 U.S. at 421. "This is the case even when the subject of an employee's speech is a matter of public concern." *Looney v. Black*, 702 F.3d 701, 710 (2d Cir. 2012) (quoting *Ross*, 693 F.3d at 305). A public employee's speech "can properly be said to have been made pursuant to ... official duties" where "the speech ... 'owes its existence to a public employee's professional responsibilities,'" *id.* at 710-11 (quoting *Garcetti*, 547 U.S. at 421-22), or where the speech is "'part-and-parcel of [the employee's] concerns' about [the employee's] ability to 'properly execute his duties.'" *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010) (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d at 689, 694 (5th Cir. 2007)).

The inquiry into whether a public employee's speech was pursuant to official duties is "a practical one," *Garcetti*, 547 U.S. at 424, and "is not susceptible to a brightline rule." *Looney*, 702 F.3d at 711 (quoting *Ross*, 693 F.3d at 306). As the Second Circuit has stated:

> Courts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision.

*Ross*, 693 F.3d at 306. The fact that an employee's speech was "made to the press and local politicians [is] ... a factor cutting in favor of finding that her speech was made as a citizen rather

9

than a public employee." *Taylor v. New York City Dep't of Educ.*, No. 11 Civ. 7833 AJN, 2012 WL 3890599, at *4 (S.D.N.Y. Sept. 6, 2012). In contrast, the fact that the speech takes the form of an employee grievance or some other form of speech for which there is "no relevant civilian analogue" is a factor supporting a determination that the speech was not made as a private citizen. *Id.* (quoting *Weintraub*, 593 F.3d at 203).

Since "determinations of whether a public employee spoke pursuant to her official duties can be very fact-specific," *Ross*, 935 F. Supp. 2d at 517, those determinations often cannot be made upon a motion to dismiss. In some cases, however, the parameters of the employee's official duties are so well established and the allegations in the complaint are so specific as to permit such a determination to be made upon a motion to dismiss. This is such a case.

First, it is beyond dispute that a teacher is responsible for protecting his or her own students and preventing inappropriate activity in his or her own classroom. "[C]ase law ... recognize[s] that ... responsibilities [such as] ... ensuring that a classroom is ... safe ... and conducive to learning and that the curriculum is substantively appropriate ... are quintessentially those of a teacher ...." *Felton v. Katonah Lewisboro Sch. Dist.*, No. 08 Civ. 9340 (SCR), 2009 WL 2223853, at *5 (S.D.N.Y. July 27, 2009). Accordingly, district courts have granted motions to dismiss First Amendment retaliation claims brought by teachers and other school employees who allege retaliation for statements made to supervisors regarding classroom and school safety. *See, e.g., Medina v. Dep't of Educ. of City of N.Y.*, No. 10 Civ. 1180 (BSJ), 2011 WL 280800, at *3 (S.D.N.Y. Jan. 14, 2011) (granting motion to dismiss a First Amendment retaliation claim by a guidance counselor who alleged that he was terminated for raising "public health and safety issues" with the school principal, his union representatives and parents of the students); *Adams v. N.Y. State Educ. Dep't*, No. 08 Civ. 5996 (VM)(AJP), 2010 WL 624020, at *24 (S.D.N.Y.

Feb. 23, 2010), *report and recommendation adopted in pertinent part*, 705 F. Supp. 2d 298 (S.D.N.Y. 2010) (holding that a teacher's complaints to her principal and at school meetings about her school's "deplorable conditions," unruly students, and the need for "intervention" did not constitute protected speech because they were made pursuant to her official job responsibilities as a teacher rather than as a citizen); *Felton*, 2009 WL 2223853, at *5 (holding that plaintiffs spoke pursuant to their official duties as educators rather than as citizens where their statements "concerned solely their classroom and their students and were addressed to their direct supervisors").

In this case, plaintiff's third cause of action alleges that plaintiff was terminated in retaliation for speaking out about "Angelides' dangerous and bizarre behavior based on her concern for the young students in the class" that plaintiff co-taught with Angelides. Complaint, ¶ 45. The Complaint does not detail precisely what plaintiff said, but states that plaintiff (1) spoke to De Paola "on several occasions about ... Angelides' troubling actions," expressing "concern about the safety of the young children in her class," *id.*, ¶ 33, and (2) met with Sklar to express her concern that "the bizarre, aggressive, and frightening behavior exhibited by ... Angelides" posed a threat to "the safety and well-being of the students in the school," *id.*, ¶ 35. Presumably, the "troubling actions" and "bizarre, aggressive, and frightening behavior" plaintiff discussed was the conduct attributed to Angelides elsewhere in the pleading, such as yelling at students regularly, *id.*, ¶ 27; calling students names and otherwise disparaging them, *id.*, ¶¶ 22, 24, 27; pulling a child's hair, *id.*, ¶ 26; and teaching the kindergartners about Adolph Hitler and the Nazi salute, *id.*, ¶ 30. The Complaint does not suggest that plaintiff ever shared her concerns with the press or the general public. To the contrary, the pleading alleges that plaintiff spoke only to De Paola, her "direct supervisor," *id.*, ¶ 33, and Sklar, the school's principal, *id.*, ¶ 35.

11

Defendant has supplied the Court with DOE regulations describing "verbal abuse" and a teacher's duty to report it. *See* Evans Declaration, Ex. A. Although this Court may be able to take judicial notice of this regulation—as well as Regulation of the Chancellor A-420, which requires teachers to report incidents of corporal punishment, such as hair-pulling—this Court does not need to consult those regulations to conclude that plaintiff was obliged to alert her superiors to the egregious behavior of her co-teacher. While plaintiff asserts that she was acting as a "private citizen," the fact that she spoke only to her direct supervisor and to the principal belies this conclusory assertion. Plaintiff did not attempt to publicize Angelides' actions, but only to protect her own students. In doing so, she was performing one of the quintessential duties of a teacher. Since that speech was not protected by the First Amendment, plaintiff's third cause of action is dismissed.

*Plaintiff's Second Cause of Action*

Defendant seeks to dismiss the second cause of action on the same ground as the third, arguing that "[a] teacher's grievance to a union concerning the alleged dangers to students in a classroom is not protected speech under the First Amendment." Defendant's Memo, p. 9 (citing *Ross*, 935 F. Supp. 2d at 519). There are three problems with this argument, however. First, it is unclear whether *Ross* stands for such a broad proposition. In *Ross*, it was "undisputed that: (1) Plaintiff learned of the unsafe conditions only because he was assigned to teach at the Settlement House ... ; (2) he believed that ensuring the safety of his students was part of his official duties as an educator ...; (3) he reported the unsafe conditions to his union representative in order to ensure that safety ... and (4) although he spoke to his union representatives on his lunch break, the conversation was on school property during the school day." *Ross*, 935 F. Supp. 2d at 519. The court held only that those "undisputed facts, taken together,

12

demonstrate[d] that Plaintiff was acting as an educator, not a private citizen, when he complained to his union representative about the dangers to students caused by the conditions of the classroom in which he was assigned to teach." *Id.*

Second, even assuming that *Ross* stands for such a broad proposition, there is nothing to suggest that plaintiff's grievance in this case related to classroom safety. The Complaint alleges only that plaintiff "filed a formal grievance with her union regarding her assignment for the 2013-2014 school year" upon learning that she "would likely be forced to work again with ... Angelides." Complaint, ¶ 37. In light of plaintiff's allegations concerning Angelides' disrespectful and abusive treatment of plaintiff personally, it is unclear whether the grievance even raised issues relating to the safety of the students.

Third, the second cause of action does not allege retaliation for the exercise of the First Amendment right to free speech. Rather, that cause of action alleges that the DOE violated "Plaintiff's constitutional right to Freedom of Association" by retaliating against plaintiff "because she chose to engage in ... and participate in union activities." *Id.*, ¶ 44. Accordingly, defendant's argument for dismissing the second cause of action appears inapposite.

### *Plaintiff's NYSHRL Claims*

Defendant also moves to dismiss plaintiff's first cause of action, which raises retaliation claims pursuant to the NYSHRL and NYCHRL. Since the standard for claims under the NYCHRL is different that the standard for Title VII and NYSHRL claims, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015). Accordingly, the Court will

13

first address defendant's arguments with respect to the NYSHRL, then discuss the claims under the NYCHRL.

Like Title VII retaliation claims, state-law retaliation claims are analyzed under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (citing cases). "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of retaliation by showing 1) 'participation in a protected activity'; 2) the defendant's knowledge of the protected activity; 3) 'an adverse employment action'; and 4) 'a causal connection between the protected activity and the adverse employment action.'" *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). If a plaintiff sustains this burden, which has been characterized as "'minimal' and '*de minimis*,'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005), "the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute*, 420 F.3d at 173. "[O]nce an employer offers such proof, ... the employee must show that retaliation was a substantial reason for the adverse employment action." *Id.* (citing *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120-21 (2d Cir. 1997).[2]

---

[2]The Supreme Court has held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S.—, 133 S.Ct. 2517, 2533 (2013). The Second Circuit has not yet decided whether the but-for-causation standard also applies to retaliation claims under NYSHRL. *Kleehammer v. Monroe County*, 583 Fed. App'x 18, 21 (2d Cir. 2014); *see Zann Kwan*, 737 F.3d at 847 n. 7 (2d Cir. 2013) ("[W]e do not decide whether [plaintiff's] NYSHRL claim is affected by *Nassar*, which by its terms dealt only with retaliation in violation of Title VII."). "However, the but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage ... indirectly through temporal proximity." *Zann Kwan*, 737 F.3d at 845.

In arguing to dismiss plaintiff's NYSHRL retaliation claim in this case, defendant focuses on causation—the fourth element of a prima facie case of retaliation. Defendant assumes, for purposes of this motion, that plaintiff's April 20, 2013, statement to De Paola constituted protected activity. Defendant's Memo, p. 10. However, defendant argues that the Complaint does not adequately allege a causal connection between this protected activity and plaintiff's termination.

As defendant tacitly acknowledges, "a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) (internal quotation marks omitted; brackets in original). The Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). As *Gorzynski* noted, the Second Circuit has "held that five months is not too long to find the causal relationship." *Id.* (citing *Gorman-Bakos*, 252 F.3d at 555). However, *Gorman-Bakos* itself cited a prior Second Circuit case—*Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990)—for the proposition that the "passage of three months" between a discrimination complaint and the allegedly retaliatory adverse employment action may be "too long to suggest a causal relationship." *Gorman-Bakos*, 252 F.3d at 554.

In arguing that plaintiff has failed to state claim for retaliation under the NYSHRL, defendant relies on *Giles v. NBC Universal, Inc.*, No. 10 Civ. 7461 (DAB), 2011 WL 4376469 (S.D.N.Y. Sept. 20, 2011), which cites to *Gorman-Bakos* for the proposition that "[t]ime periods as short as three months have been found to be too long to be considered causally connected."

15

*Id.*, at \*4. Defendant also quotes *Galimore v. City Univ. of N.Y. Bronx Comm. Coll.*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009), for the general proposition that "the protected activity and the adverse action must occur 'very close' together" in order to establish causation from "mere temporal proximity," and cites to *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003), which observed that "the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months."

In this case, the Complaint alleges that plaintiff submitted the written statement complaining of discriminatory treatment to De Paola on or about April 20, 2013, Complaint, ¶ 34, and was notified of her termination on June 25, 2013. Even assuming that plaintiff was notified as soon as the decision to terminate her was reached, the interval between plaintiff's protected activity and the adverse employment action was two months, five days. None of the authorities cited by defendant suggest that a period of just over two months is too long to support an inference of causation. To the contrary, both *Galimore* and *Ashok* hold that a period of two months is short enough to establish causation for purposes of making out a prima facie case. *See Galimore*, 641 F. Supp. 2d at 288 (holding that two-month period was "close enough to meet Plaintiff's initial burden of demonstrating causation"); *Ashok v. Barnhart*, 289 F. Supp. 2d at 314 ("A period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related.").

Defendant does not only (or even primarily) argue that the Complaint fails to make out a prima facie case of retaliation, but also argues that there were legitimate, non-discriminatory reasons for plaintiff's termination. However, much of the evidence which defendant cites in support of this argument is not mentioned in the Complaint, and is not the sort of evidence which this Court can consider upon a motion to dismiss. To be sure, Rule 12(d) of the Federal

Rules of Civil Procedure provides that a court can consider "matters outside the pleadings" if the court converts the motion to dismiss into a motion for summary judgment and gives all parties "a reasonable opportunity to present all the material that is pertinent to the motion." However, the court must also give the non-movant the opportunity to take relevant discovery. *See Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009).

The Court declines to convert defendant's motion to dismiss the first cause of action into a motion for summary judgment so as to consider matters outside of plaintiff's pleading. In order to meet her burden under the third step of the *McDonnell Douglas* analysis, plaintiff would need discovery on the central issue in this case: why plaintiff was terminated. Moreover, granting summary judgment on the first cause of action would not dispose of this case, since the motion to dismiss second cause of action has been denied. Under these circumstances, it would not be efficient to convert the motion simply to reach the issue now, rather than later. It seems more efficient to permit the parties to complete discovery and to permit defendant to raise this issue again, if appropriate, upon a motion for summary judgment.

*Plaintiff's NYCHRL Claims*

"[F]or many years, the NYCHRL was construed 'to be coextensive with its federal and state counterparts.'" *Velazco*, 778 F.3d at 410 (quoting *Mihalik*, 715 F.3d at 108). However, in 2005, the New York City Council passed the Restoration Act, which created "two new rules of construction":

> First, it explicitly created a one-way ratchet, by which "[i]nterpretations of New York state or federal statutes with similar wording may be used to aid in interpret[ing]" the NYCHRL, insofar as "similarly worded provisions of federal and state civil rights laws [would constitute] a floor below which the [NYCHRL] cannot fall." Restoration Act § 1; *see Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

17

> Second, it amended the NYCHRL to require a liberal construction
> of its amendments "for the accomplishment of the [NYCHRL's]
> uniquely broad and remedial purposes ..., regardless of whether
> federal or New York State civil and human rights laws, including
> those laws with provisions comparably-worded to provisions of
> [the NYCHRL], have been so construed." Restoration Act § 7
> (amending N.Y.C. Admin. Code § 8–130).

*Velazco*, 778 F.3d at 410 (brackets in original).

In addition, the Restoration Act established a more liberal standard for NYCHRL retaliation claims than for federal or state retaliation claims. Section 3 of that Act provides:

> The retaliation or discrimination complained of under this
> subdivision need not result in an ultimate action with respect to
> employment, ... or in a materially adverse change in the terms and
> conditions of employment, ... provided, however, that the
> retaliatory or discriminatory act or acts complained of must be
> reasonably likely to deter a person from engaging in protected
> activity.

Accordingly, to prevail on a retaliation claim under the NYCHRL, a plaintiff need only show that he "took an action opposing [her] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted).

In moving to dismiss plaintiff's first cause of action, plaintiff does not distinguish between plaintiff's NYSHRL and NYCHRL claims. However, as discussed above, Defendant's Memo does not establish a basis for dismissing plaintiff's retaliation claims under the NYSHRL. Since "the standard for claims under the NYCHRL is intended to be more liberal than the standard for Title VII and NYSHRL claims," *Baldwin v. Goddard Riverside Comm. Ctr.*, — Fed. App'x—, 2015 WL 5294926, at *2 (2d Cir. Sept. 11, 2015) (summary order), defendant has also not established a basis for dismissing claims under the NYCHRL. *Cf. Zann Kwan v. Andalex Group LLC*, 737 F.3d at 843 n. 3 (finding it unnecessary to analyze motion for

summary judgment with respect to NYCHRL claims because defendant, having failed to show it was entitled to summary judgment on federal and state claims, "would not be entitled to summary judgment under the more expansive standard of the NYCHRL.").

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted only insofar as it seeks to dismiss the third cause of action. Those portions of defendant's motion which seek to dismiss the first and second causes of action are denied.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: September 30, 2015
Brooklyn, New York